**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**EDWARD R.L. ALEXANDER, 99-A-4752,**

                              **Plaintiff,**               **03-CV-0147(Sr)**

**v.**

**CORRECTIONAL OFFICER DEMING, et al.,**

                              **Defendants.**

_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. #15.


Plaintiff filed this _pro se_ action seeking relief pursuant to 42 U.S.C. § 1983.  Dkt. #1.  Plaintiff alleges that while an inmate at the Southport Correctional Facility ("Southport"), his rights pursuant to the First, Sixth[1], Eighth and Fourteenth Amendments to the United States Constitution were violated.  _Id_.  Currently before the Court is a motion for summary judgment on plaintiff's claims by defendants Donahue, Murphy and Demming.  Dkt. #44.  Also before this Court is plaintiff's motion for protection from retaliation seeking transfer out of Southport.  Dkt. #64.  For the following

_____

[1] Plaintiff's conclusory allegation that defendants violated his Sixth Amendment rights, without more, is insufficient and such a claim fails as a matter of law.

reasons, defendants' motion for summary judgment is granted in part and denied in part and plaintiff's motion for protection from retaliation is denied.

## **BACKGROUND**

Plaintiff, proceeding *pro se*, filed this action on February 24, 2003, against defendants Michael McGinnis [2], "Correctional Officer Demming" (incorrectly spelled Deming in the complaint), "Correctional Lieutenant Donahue" and "Correctional Officer Murphy," pursuant to 42 U.S.C. § 1983, seeking $2 million in compensatory damages and to be removed from the Special Housing Unit and returned to the general population in one of the following correctional facilities, Sing Sing, Green Haven, or Eastern. Dkt. #1. Specifically, plaintiff complains that while he was housed at Southport, defendant Demming interfered with plaintiff's incoming/outgoing mail beginning in November 2002 and continuing through December 2002, in violation of his First, Sixth[3] and Fourteenth Amendment rights. *Id*. Plaintiff further alleges that defendant Demming harassed plaintiff and that on December 26, 2002, defendant Demming issued a misbehavior report in retaliation for plaintiff making complaints about him. *Id*. As against defendant Murphy, plaintiff alleges that he denied plaintiff his property when he was transferred to a different cell and further, that defendant Murphy destroyed plaintiff's property, including religious items in violation of plaintiff's First

---

[2] On January 13, 2004, this Court granted defendant McGinnis' motion to dismiss the complaint. Dkt. #30.

[3] *See* footnote 1, *supra*.

Amendment rights. Finally, plaintiff alleges that on January 3, 2003, defendant

Donahue used excessive force. *Id*.


**Interference with Incoming/Outgoing Mail and Denial of Access to Courts**

Beginning on or about November 22, 2002 and continuing through

December 2002, plaintiff claims that defendant Demming interfered with his incoming

and outgoing mail. Dkt. #1. Specifically, plaintiff alleges:

> 1) On or about November 22nd, 2002 Officer Deming [sic]
> starting [sic] taking inmate Edward R.L. Alexander
> #99A4752 (hereafter Petitioner) incoming mail after the
> facilities mailroom sends it to the housing area for it to be
> handed out by the Correctional Officer to the Inmate in [sic]
> which it came.
>
> 2) Petitioner notice to [sic] he was not receiving any mail and
> thought that something had happened to his loveones [sic].
>
> * * *
>
> 5) On or about December 10th, 2002 Officer Deming [sic]
> stood in front of the Petitioner [sic] cell and alouded [sic] told
> the Petitioner so that all other inmates can hear that he has
> been taking the Petitioner incoming mail for the pass [sic]
> two weeks or so.
>
> 6) To show and prove that he in fact was [sic] his [sic]
> started calling the Petitioner by a nickname that he is only
> known to [sic] by his Mother, Sisters, And wife which [sic]
> "Snuggles."
>
> * * *
>
> 9) Starting that night Officer Deming [sic] stopped picking up
> the Petitioner's out going mail so that the Petitioner can [sic]
> write to anyone to let them know what he was doing ...
>
> * * *
>
> 40) On [sic] the week of December 18th 2002 the petitioner
> received by legal mail a copy of a [sic] Application for an

-3-

Extension of Time submitted by Stephen F. Gawlick
Assistant Attorney General of Eliot Spitzer Attorney General
of the State of New York.

* * *

42) The Petitioner wished to answer to [sic] the Court on the
Assistant Attorney General Application ...

43) The Petitioner was denied his right to do so by Officer
Deming [sic] who refused to pick up the Petitioner's out
going mail.

Dkt. #1. Plaintiff's only allegation of injury with respect to his denial of access to the
courts claim is that he was prohibited from responding to a motion for an extension of
time filed in *Alexander v. Goord*, 02-CV-589. Dkt. #45, ¶ 8. The motion for an
extension of time filed on December 18, 2002, was granted by United States District
Judge William M. Skretny on January 2, 2003. *Id*. at ¶ 10; Dkt. #58, ¶¶ 7-8. Notably,
there was no separate order from Judge Skretny specifically providing plaintiff with the
opportunity to respond or scheduling oral argument. *Id*. Plaintiff claims that "[i]f the
petitioner was able to mail out, out going mail he would have been able to answer the
motion and the judgment might have went in his favor and not have been granted."
Dkt. #1, ¶ 46.


**Harassment of Plaintiff/Retaliation**

Plaintiff further alleges that defendant Demming harassed him by turning
out his lights and verbally harassing him. Dkt. #1, ¶ 4; Dkt. #45, ¶ 12. In support of
their motion for summary judgment, defendants submit that plaintiff testified that
defendant Demming never physically abused plaintiff. Dkt. #45, ¶ 12. Plaintiff claims

that in furtherance of his threats to do so, defendant Demming issued a Misbehavior

Report to plaintiff on December 26, 2002, in retaliation for plaintiff making complaints

against defendant Demming.  Specifically, the complaint alleges,

> [o]n December 26, 2002 Officer Deming [sic] wrote the
> petitioner a Misbehavior Report that he made up against the
> Petitioner which he threaten the petitioner that he was going
> to do (the misbehavior was a Tier II).  The Petitioner
> informed Sergant [sic] Furmen [sic] and Sergant [sic]
> Osborne counseler [sic] Ms. Klapp that Officer Deming [sic]
> threaten to write and make up Misbehavior Report on his
> [sic] so that the Petitioner will be removed from going up to a
> higher level and put on a lower level ... a week before he did
> it.

Dkt. #1, ¶¶ 35-36.


**Excessive Use of Force**

Plaintiff's complaint alleges that on January 3, 2003, defendant

Donahue presided over a Tier II disciplinary hearing.  Dkt. #1, ¶ 37.  Plaintiff further

alleges that during the hearing,

> [o]nce Lt Donahue stopped the hearing tape to get the
> Petitioner witnesses in [sic] which he asked for. While
> leaving the hearing room Lt Donahue raced after the
> Petitioner and shoved him around and hitting the petitioner's
> head against the wall behind him and started choking the
> Petitioner with his left hand around the Petitioner's neck.
> While choking the petitioner Lt. Donahue started stouting
> [sic] 'you are sueing [sic] me you asshole' 'I'll kill you' 'My
> officer's [sic] will kill you!'  Lt. Donahue kept choking the
> Petitioner who was hand cuff [sic] the hold [sic] time of the
> assault upon him by Lt. Donahue.  Lt. Donahue then again
> hit the Petitioners [sic] head against the wall behind him.

Dkt. #1, ¶¶ 47-50.

## Denial and Destruction of Property

Plaintiff alleges that he was denied property when he was moved from one cell to another while housed at Southport. Specifically, plaintiff alleges, "[t]he Petitioner was then take [sic] to level 1 on the First Floor where he was put in a cell with no sheets, no matess [sic], no personal property, nothing – The Petitioner asked Officer Murphy who is the study [sic] 7am to 3pm officer of C-1 company where the Petitioner was housed for his property and sheets tolet [sic] paper etc. The petitioner was denied the above for 3 days. Petitioner was without mattess [sic], sheets, toothpaste, books etc." Dkt. #1, ¶¶ 53 - 55. In support of their motion for summary judgment, defendants rely on portions of plaintiff's deposition testimony, wherein plaintiff testified that he was denied property on January 3, 2003, from 11:00 a.m. until midnight. Dkt. #45, ¶ 15. Thus, as revealed during plaintiff's deposition, the total time plaintiff claims he was denied these items was approximately twelve to thirteen hours. Dkt. #45, ¶ 16; Dkt. #48, p.35.

On or about January 8, 2003, plaintiff alleges that defendant Murphy destroyed his "Holy Qu rān, Kufi, and Prayer Rug, along with magazines, books, and personal photos, by cutting the [sic] up."[4] Dkt. #1, ¶ 57. Plaintiff further alleges that defendant Murphy then placed the cut up photographs in a manilla envelope and threw it into plaintiff's cell. *Id*. at ¶ 58. Plaintiff claims that he wrote to the Superintendent,

---

[4] In opposition to defendants' motion for summary judgment, plaintiff states that defendant Murphy's conduct, destruction of his "Holy Qu rān and Prayer Rug" took place on January 29, 2003. Dkt. #59, ¶ 5.

Sergeant Furman and the Inmate Grievance Review Committee ("IGRC") concerning defendant Murphy's actions and "nothing was done."  Dkt. #1, ¶ 59.  Plaintiff further claims that, "[d]uring the time of November 22, 2002 to January 4, 2003 the Petitioner had to inform the I.G.R.C., Superintendent, Deputy Superintendent, Brian Malone, Inspector General, and others in Albany by other inmate's writing them for him (the petitioner) suffered lost [sic] of property, stressed [sic] of not being able to contact family and courts."  Dkt. #1, ¶ 61.

In opposition to defendants' motion for summary judgment, plaintiff claims that he was unable to file a grievance during the period January 29, 2003 to February 24, 2003 (when he left Southport) "because no property was given to him for him to know the damage and that he still had the proof until he was transferred on Feb 24 2003."  Dkt. #58, ¶ 13.  Plaintiff was familiar with the grievance process as he filed Grievance No. SPT-25679-03 on January 7, 2003 setting forth a number of complaints concerning staff misconduct at Southport.  On January 24, 2003, plaintiff did, however, file a grievance, Grievance No. SPT-25822-03, complaining that on January 8, 2003, defendant Murphy "wrongfully stored plaintiff's books."  Dkt. #47, pp.34-35.  Grievance No. 25822-03 does not, however, set forth any complaint concerning defendant Murphy's destruction of plaintiff's property.[5]  *Id*.

---

[5] *See* footnote 4, *supra*.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party

seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and
> invoke the appropriate statute. The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


## Interference with Mail and Denial of Access to the Courts Claims

"Interference with legal mail implicates a prison inmate's rights to access

to the courts and free speech as guaranteed by the First and Fourteenth Amendments

to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003). To state a

valid free speech claim, a prisoner must allege that the "prison officials regularly and

unjustifiably interfered with the incoming legal mail." *Davis*, 320 F.3d at 351 (internal

quotations marks omitted). "We [have] determined that as few as two incidents of mail

tampering could constitute an actionable violation (1) if the incidents suggested an

ongoing practice of censorship unjustified by a substantial government interest, or (2) if

the tampering justifiably chilled the prisoner's right of access to the courts or impaired

the legal representation received." *Id.*, citing *Washington v. James*, 782 F.2d 1134,

1139 (2d Cir.1986). Although prisoners retain the constitutional right to meaningful

access to the courts, prisoners alleging a violation of this right in the context of a section

1983 action must demonstrate actual harm, e.g., that a "nonfrivolous legal claim had

been frustrated or was being impeded." *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (footnotes omitted); *see Bounds v. Smith*, 430 U.S. 817, 823 (1977).

In the instant case plaintiff's only allegation of injury with respect to his denial of access to the courts claim is that he was prohibited from responding to a motion for an extension of time to answer the complaint filed on December 18, 2002, in *Alexander v. Goord*, 02-CV-589. Dkt. #45, ¶ 8. The motion for an extension of time was granted by United States District Judge William M. Skretny on January 2, 2003 without a briefing schedule or oral argument. *Id*. at ¶ 10; Dkt. #58, ¶¶ 7-8. Plaintiff claims that "[i]f the petitioner was able to mail out, out going mail he would have been able to answer the motion and the judgment might have went in his favor and not have been granted." Dkt. #1, ¶ 46. Plaintiff's single allegation of interference with his legal mail, *to wit*, plaintiff's claim that defendant Demming's action prevented him from opposing defendants' motion for an extension of time to answer the complaint is insufficient to satisfy the "actual injury" requirement set forth in *Lewis*. Moreover, with the exception of plaintiff's wholly unsupported, conclusory allegations, there is nothing in the record before this Court to suggest an ongoing practice of censorship or that the alleged tampering chilled the plaintiff's right of access to the courts or impaired the legal representation received. Based on the foregoing, plaintiff's denial of access to the courts claim fails as a matter of law and defendants' motion for summary judgment is granted.

**Harassment Claim**

Courts within the Second Circuit have held that threats of disciplinary action and verbal harassment without injury are insufficient to state a constitutional violation. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming dismissal of claim of harassment, stating "the claim that a prison guard called [plaintiff] names also did not allege any appreciable injury and was properly dismissed."); *Malsh v. Austin*, 901 F.Supp 757, 763 (S.D.N.Y. 1995) (threats of disciplinary action and physical violence from which plaintiff did not allege any injury did not constitute a constitutional violation); *Ramirez v. Holmes*, 921 F.Supp. 204, 201 (S.D.N.Y. 1996) (threats or verbal harassment without injury does not state a claim). Here, plaintiff's complaint is utterly devoid of any allegation of injury as a result of defendant Demming's alleged harassment. Plaintiff alleges that defendant Demming would turn off his lights and verbally harass him. However, plaintiff does not allege that he suffered any injury as a result of defendant Demming's alleged actions. Moreover, plaintiff admitted during his deposition that defendant Demming never physically abused him. Dkt. #45, ¶ 13. Accordingly, because plaintiff has failed to allege any appreciable injury as a result of defendant Demming's purported harassment, plaintiff's claim fails as a matter of law and defendants' motion for summary judgment is granted.

## Conditions of Confinement Claim

The Eighth Amendment prohibits cruel and unusual punishment that involves the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment to the United States Constitution imposes the duty on prison officials to provide humane conditions of confinement and officials must ensure that inmates receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In order to prevail on a claim of a violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective component. First, the deprivation must be, objectively, sufficiently serious, such as "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. at 834, *citing Rhodes*, 452 U.S. at 347. The second component requires that the prison official have a "sufficiently culpable state of mind." *Id*. In cases such as this, the state of mind is one of deliberate indifference to the health and safety of an inmate. *Id*.

Conditions of confinement inflict cruel and unusual punishment when they result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society." *Id*. With respect to the subjective component, a prison official will not be held liable for inhumane conditions, "unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Supreme Court of the United States adopted "subjective recklessness" as is used in criminal law as the test for "deliberate indifference" under the Eighth Amendment. *Id*. at 839-40.

Here, plaintiff complains that on or about January 3, 2003, he was moved to another cell at Southport and that defendant Murphy failed to provide him with sheets, a mattress and personal property. Dkt. #1, ¶ 53. During his deposition, plaintiff reiterated that "I was put in the cell with nothing in it. I asked him [Murphy] for level one supplies. Didn't give them to me." Dkt. #48-2, pp.28-29. Specifically, plaintiff complained that he was not provided with toilet paper, toothpaste, a mattress and sheets. *Id*. at p.29. Moreover, plaintiff stated that he was without the enumerated items on January 3, 2003, from approximately 11:00 a.m. to midnight, twelve to thirteen hours. Dkt. #48-2, pp.120-123. Following the reasoning articulated by the United States Supreme Court, discussed above, the alleged deprivation of sheets, a mattress and certain personal items for approximately twelve-thirteen hours does not constitute an "unquestioned and serious deprivation[ ] of basic human needs" or a deprivation "of the minimal civilized measure of life's necessities" so as to rise to the level of a violation of the Eighth Amendment. Accordingly, based on the foregoing, defendants' motion for summary judgment is granted.

**Destruction of Property Claim**

In his complaint, plaintiff alleges that on or about January 8, 2003, defendant Murphy destroyed his personal property. Specifically, plaintiff alleges that defendant Murphy destroyed his "Holy Qu rān, Kufi, and Prayer Rug, along with magazines, books, and personal photos, by cutting the [sic] up." Dkt. #1, ¶ 57. Thereafter, in opposition to defendants' motion for summary judgment, plaintiff states that defendant Murphy destroyed his photographs, Holy Qu rān and Prayer Rug on January 29, 2003. Dkt. #59, ¶ 5. Plaintiff claims that he wrote to the Superintendent, Sergeant Furman and the Inmate Grievance Review Committee ("IGRC") concerning defendant Murphy's actions and "nothing was done." Dkt. #1, ¶ 59. Plaintiff further claims that, "[d]uring the time of November 22, 2002 to January 4, 2003 the Petitioner had to inform the I.G.R.C., Superintendent, Deputy Superintendent, Brian Malone, Inspector General, and others in Albany by other inmate's writing them for him (the petitioner) suffered lost [sic] of property, stressed [sic] of not being able to contact family and courts." Dkt. #1, ¶ 61.

Plaintiff claims that he was unable to file a grievance during the period January 29, 2003 to February 24, 2003 "because no property was given to him for him to know the damage and that he still had the proof until he was transferred on Feb 24 2003." Dkt. #58, ¶ 13. On January 24, 2003, plaintiff filed a grievance, Grievance No. SPT-25822-03, complaining that on January 8, 2003, defendant Murphy "wrongfully stored plaintiff's books." Dkt. #47, pp.34-35. Grievance No. 25822-03 does not, however, set forth any complaint concerning defendant Murphy's destruction of

plaintiff's property.  *Id*.  As discussed below, regardless of the date on which defendant

Murphy allegedly destroyed plaintiff's property (either January 8, 2003, as alleged in the

complaint or January 29, 2003, as alleged in opposition to defendants' motion for

summary judgment), plaintiff's claim fails as a matter of law because he failed to

exhaust his administrative remedies.

The PLRA states:  "No action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*,

534 U.S. 516 (2002), the Supreme Court held that exhaustion of administrative

remedies in 1997(e) cases is mandatory[6] and should be applied broadly.  *Id.* at 524.

The *Nussle* Court reasoned that requiring inmates to follow the grievance process

would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out

frivolous claims; and for those cases that eventually come to court, the administrative

record could potentially clarify the legal issues.  *Id.* at 524-25.  "Even when the prisoner

seeks relief not available in grievance proceedings" – such as monetary damages –

"exhaustion is a prerequisite to suit."  *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731,

741 (2001).  Thus, the "PLRA's exhaustion requirement applies to all inmate suits about

---

[6] Although mandatory, administrative exhaustion is an affirmative defense rather
than a jurisdictional predicate.  *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003);
*Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

-15-

prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong."  *Id.* at 532.


The New York State Department of Correctional Services employs a

three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance

with the Inmate Grievance Review Committee as set forth in 7 N.Y.C.R.R. §

701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the

Inmate Grievance Resolution Committee's adverse written response as set forth in 7

N.Y.C.R.R. § 701.7(b)(1); and appeal to the Central Office Review Committee in

Albany, New York within four working days of receipt of the superintendent's adverse

written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1).  *Abney v. McGinnis*, 380

F.3d 663  (2d Cir. 2004).


In assessing what constitutes exhaustion of administrative remedies, the

Court of Appeals for the Second Circuit determined that

> a three-part inquiry is appropriate in cases where a prisoner
> plaintiff plausibly seeks to counter defendants' contention
> that the prisoner has failed to exhaust available
> administrative remedies as required by the PLRA, 42 U.S.C.
> § 1997e(a).  Depending on the inmate's explanation for the
> alleged failure to exhaust, the court must ask whether
> administrative remedies were in fact "available" to the
> prisoner.  *Abney v. McGinnis*, 380 F.3d 663 . . . . The Court
> should also inquire as to whether the defendants may have
> forfeited the affirmative defense of non-exhaustion by failing
> to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 . .
> ., or whether the defendants' own actions inhibiting the
> inmate's exhaustion of remedies may estop one or more of
> the defendants from raising the plaintiff's failure to exhaust

as a defense, *Ziemba*,[7] 366 F.3d at 163. If the court finds
that administrative remedies were available to the plaintiff,
and that the defendants are not estopped and have not
forfeited their non-exhaustion defense, but that plaintiff
nevertheless did not exhaust available remedies, the court
should consider whether "special circumstances" have been
plausibly alleged that justify "the prisoner's failure to comply
with administrative procedural requirements." *Giano v.
Goord*, 380 F.3d 670. . . .

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).


The record before this Court is devoid of any evidence to suggest that

plaintiff filed a grievance with respect to his allegations that defendant Murphy

destroyed his property, including certain religious items, in violation of his First

Amendment rights. Moreover, there is nothing in the record to suggest that plaintiff

endeavored to exhaust his administrative remedies through informal channels. *See

Marvin v. Goord*, 255 F.3d 40 (2d Cir. 2001) (holding that "a grievance through informal

channels satisfies the exhaustion requirement if the prisoner thereby obtained a

favorable resolution of his grievance." Accordingly, based upon the undisputed facts

before this Court, because plaintiff failed to exhaust his administrative remedies, his

claim against defendant Murphy for the alleged destruction of his property fails as a

matter of law.


In addition to their argument that plaintiff failed to exhaust his

administrative remedies, defendants argue that plaintiff's destruction of property claim,

---

[7] *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004).

standing alone, does not state a cause of action.  Specifically, defendants contend that a claim for the loss of property does not lie in federal court if the state courts offer an adequate remedy for such deprivation.  According to defendants, in New York, such a remedy exists in section 9 of the New York Court of Claims Act.  Dkt. #46, pp.10-11. Because this Court finds that plaintiff failed to exhaust his administrative remedies and that summary judgment may be granted on that basis, the Court need not address this argument.

**Excessive Use of Force Claim**

A claim of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution has both a subjective and objective component.  To satisfy the subjective component, a plaintiff must demonstrate that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the circumstances surrounding the challenged conduct."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009), *quoting Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) and *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  Whether conduct of prison officials can be characterized by "wantonness" is determined by "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wright,* 554 F.3d at 268, *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The objective component of a claim of cruel and unusual punishment concentrates on the harm done in light of "contemporary standards of decency." *Wright*, 554 F.3d at 268, *quoting Hudson*, 803 U.S. at 8.

"Where a prisoners' allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." *Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009), *citing Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) ("reversing summary dismissal of prisoner's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was 'thin' as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the 'medical records after the ... incident with [that officer] indicated only a slight injury'"); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("vacating district court's *sua sponte* dismissal of prisoner's complaint, though characterizing his 'excessive force claim [a]s weak and his evidence [as] extremely thin' where prisoner alleged that he was hit by prison guards 'after he was handcuffed' but 'the only injuries he suffered were a bruised shin and swelling over his left knee'"). Notwithstanding the foregoing, *"de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," is not proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson*, 503 U.S. at 10. Indeed, the Supreme Court has further elaborated, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id*. at 9.

Plaintiff alleges that during a Tier II disciplinary hearing on January 3, 2003, defendant Donahue threatened, choked and hit plaintiff's head against the wall. Dkt. #1. In opposition to defendants' motion for summary judgment, plaintiff further claims that as a result of defendant Donahue's conduct, he suffered a "bump on the head and mental anguish." Dkt. #58, ¶ 15. In defendants' memorandum of law in support of their motion for summary judgment, counsel for defendant Donahue disputes that any force was used. Dkt. #46, p.11. However, the record before this Court is devoid of any evidence in admissible form submitted by defendant Donahue that in any way refutes plaintiff's allegations of excessive use of force. Thus, plaintiff's allegations of excessive use of force remain undisputed. Accordingly, this Court finds that there is a genuine issue of material fact and defendants' motion for summary judgment on plaintiff's excessive use of force claim against defendant Donahue must be denied.

In addition, defendants further contend that plaintiff's claim of mental anguish as a result of the alleged excessive force used by defendant Donahue should be dismissed because plaintiff cannot recover damages for mental or emotional injury absent a showing of physical injury. Contrary to defendants' conclusory argument in their memorandum of law, plaintiff has alleged a physical injury as a result of defendant Donahue's alleged conduct. Thus, defendants' motion for summary judgment with respect to plaintiff's claim for damages for mental anguish is denied.

## Qualified Immunity

Finally, defendants claim that they are entitled to qualified immunity because "it was objectively reasonable for the Defendants to believe that measures they took to ensure Plaintiffs' [sic] health and safety were proper and lawful, and it was objectively reasonable for Defendants to believe that their responses to Plaintiffs' [sic] concerns were lawful and proper."  Dkt. #46, p.15.  Because this Court agrees with defendants Demming and Murphy that plaintiff's claims against those two defendants must be dismissed as a matter of law, this Court need only consider defendant Donahue's claim of qualified immunity.

Government officials are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

> The qualified immunity defense requires consideration of the clarity of the law establishing the right allegedly violated and whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that the applicable law was being violated. These inquiries combine to form a standard that the Supreme Court has called "objective legal reasonableness," that is, whether it was objectively reasonable for a defendant to think that the challenged conduct did not violate the plaintiff's clearly established rights.

*Vega v. Miller*, 273 F.3d 460, 466 (2d Cir.2001) (internal citations omitted).  A defendant is entitled to qualified immunity if (1) his or her actions did not violate clearly established

law or (2) it was objectively reasonable to believe that his or her actions did not violate

such law.  *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir.1999). It has been said that:

> The contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing
> violates that right. This is not to say that an official action is
> protected by qualified immunity unless the very action in
> question has previously been held unlawful, ... but it is to say
> that in the light of pre-existing law the unlawfulness must be
> apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

(citations omitted). Thus, the doctrine of qualified immunity operates to ensure that

before they are subjected to suit, officers are on notice that their conduct is unlawful.

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

In the instant case, the Court has no doubt that reasonable prison officials

would understand that the malicious and sadistic use of force, as plaintiff asserts,

constitutes a violation of the Eighth Amendment.  Accordingly, defendant Donahue is

not entitled to qualified immunity on the current record.

**Retaliation**

Plaintiff, who is currently housed at Southport, complains that he has

suffered retaliation by, *inter alia*, defendants.  Dkt. ##64 and 65.  Plaintiff asks this

Court to order that plaintiff not be housed at either Southport or Upstate Correctional

Facility.  *Id*.  This Court lacks the authority to order that the defendant be imprisoned in

any particular facility.  *See United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995);

*Fisher v. Goord*, 981 F.Supp. 140, 176 (W.D.N.Y. 1997); *United States v. Hollenbeck*,

932 F.Supp 53, 58 (N.D.N.Y. 1996).  Accordingly, plaintiff's motion for protection from

retaliation is denied.


## CONCLUSION

For the foregoing reasons, defendants Demming and Murphy's motion for

summary judgment (Dkt. #44) is **GRANTED**, defendant Donahue's motion for summary

judgment (Dkt. #44) is **DENIED** and plaintiff's motion for protection from retaliation (Dkt.

#64) is **DENIED**.


The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this Order would not be taken in good faith, and leave to appeal to the

Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438

(1962).  Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.


**SO ORDERED.**

DATED:      Buffalo, New York
            April 15, 2009

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**